**8**

HEFNER, STARK & MAROIS, LLP
Howard S. Nevins (CA Bar Assn. No. 119366)
Aaron A. Avery (CA Bar Assn. No. 245448)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-3883
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: aavery@hsmlaw.com

Attorneys for
GEOFFREY RICHARDS,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re<br><br>SUSAN ALLARD AND STEVEN CRAIG,<br><br>Debtors. | Case No.: 13-23268-C-7<br><br>DC No.: HSM-004<br><br>Date: April 8, 2014<br>Time: 9:30 a.m.<br>Place: 501 I Street<br>Sacramento, CA<br>Ctrm. 35, 6th Flr.<br>Judge: Hon. Christopher M. Klein |

### TRUSTEE'S MOTION FOR ORDER AUTHORIZING SALE OF ESTATE ASSETS

GEOFFREY RICHARDS, the Chapter 7 Trustee ("Trustee") in the pending bankruptcy case of SUSAN ALLARD and STEVEN CRAIG ("Debtors"), Case No. 13-23268-C-7, submits this Motion for Order Authorizing Sale of Estate Assets ("Motion"), and in support thereof, respectfully represents as follows:

1. This case was filed as a voluntary Chapter 7 case on March 11, 2013.

2. The Trustee was appointed Chapter 7 Trustee on March 12, 2013, and has served in that capacity at all times thereafter.

3. Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. Sections 157 and 1334; 11 U.S.C. Section 363; and the reference to this Bankruptcy Court by the United States District Court for the Eastern District of California.

## Introduction and Relief Requested

4.   As set forth herein, the Trustee requests authorization to sell the estate's interest in all assets of the Estate scheduled by the Debtors, excluding the Debtors' retirement assets listed under Item 12 of Amended Schedule B filed by the Debtors on May 13, 2013 (the "Assets"). For purposes hereof, the Estate's interests in the Assets refers to (i) the Assets of the Estate with respect to which the Debtors did not file any exemption claim (the "Non-Exempted Assets"), and (ii) the Estate's equity, if any, in the Assets of the Estate (excluding the retirement plans) with respect to which the Debtors filed an exemption claim (i.e., the amount by which the value of the asset, net of secured debt thereon, exceeds the amount of exemption claimed thereon by Debtors) (the "Equity in Exempted Assets").

5.   In their Amended Schedule A, filed March 11, 2013, and Amended Schedules B and C, filed May 13, 2013, excluding the Debtors' retirement assets listed therein, the Debtors listed the following values for the non-exempt, partially exempted and fully exempted Assets of the Estate and corresponding amounts for the secured debt against the Debtors' residence and exemption claims related to the Assets:

| Scheduled Assets | Scheduled Value | Debt/Exemptions | Scheduled Equity |
|---|---|---|---|
| **Non-Exempted Assets** | | | |
| Cash and Checking/Savings Accounts (Excluding BofA) | $3,280 | - 0 - | $3,280 |
| Business Interests (Corporate/LLC) | 3,003 | - 0 - | 3,003 |
| Counterclaim v. Bowey | 100,000 | - 0 - | 100,000 |
| Non-Exempted Vehicles | 10,166 | - 0 - | 10,166 |
| Royalty Payments John Wiley & Sons | 200 | - 0 - | 200 |
| **Partially-Exempted Assets** | | | |
| Davis CA - Residence | 680,000 | 422,181 (debt) + 175,000 (exmpt) | 82,819 |

HEFNER, STARK & MAROIS, LLP
Sacramento, California

| | | | |
|---|---:|---:|---:|
| Partially Exempted Vehicles (1993 Ford/1998 Mercedes) | 6,868 | 3,650 | 3,218 |
| Household Goods, Books/Collectibles, Clothing, Jewelry, Equipment | 8,425 | 7,575 | 850 |
| **Fully-Exempted Assets** | | | |
| Bank of America Checking | 2,040 | 2,040 | - 0 - |
| Fully Exempted Vehicle (1997 Volvo 850) | 1,150 | 1,150 | - 0 - |
| **TOTAL** | **815,132** | **611,596** | **203,536** |

Copies of Debtors' Amended Schedules A, B and C, which more particularly describe the Assets that are the subject of this Motion, are attached as Exhibits A, B and C to the Agreement for Sale of Estate Assets ("Agreement") described below, a true and correct copy of which is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served herewith.

6.  As set forth in the table above, based on the Debtors' estimated values and exemption claims, and the estimated secured debt encumbering the Debtors' residence, but without deducting the amounts of any secured claims against any of the other Assets, the <u>scheduled</u> value of the Estate's interests in the Assets is (i) $116,649 as to the Non-Exempted Assets and (ii) $86,887 of Equity in the Exempted Assets. The Trustee disputes the Debtors' valuations and resulting equity of a number of the Assets described above.

7.  Based on the Trustee's independent review and analysis of the valuations assigned to the Assets, Trustee has agreed to the Debtors' offer to purchase the Assets for the sum of $55,000.00 ("Purchase Price"), in accordance with the terms and conditions of the Agreement described below. This Motion seeks approval from the Court for the Trustee's entry into the Agreement and sale of the Assets to Debtors pursuant to the terms thereof.

### The Agreement

8.  Debtors' offer to purchase the Assets has been accepted by the Trustee through the mutual execution of the Agreement.

9.  The material terms of the Agreement are as follows:

3

        a.     The Purchase Price for the Assets is $55,000.00, or the highest amount, if any, bid by Debtors in excess thereof at any overbidding at the hearing to approve this Motion ("Purchase Price"). The amount paid by Debtors is net of any and all exemptions claimed by Debtors with respect to the Assets;

        b.     The proposed sale of the Assets and the Agreement are subject to Bankruptcy Court approval through the granting of this Motion;

        c.     The Debtors will pay the Purchase Price no later than ten (10) business days after entry of the court order approving the Agreement and the sale of the Assets to Debtors;

        d.     The Debtors will acquire the Assets "AS IS," "WHERE IS," "WITH ALL FAULTS," with no representations or warranties of any kind whatsoever from the Trustee or the Estate, subject to any and all liens and encumbrances, claims or competing interests therein, known or unknown, with the Debtors responsible for any and all sales, transfer, use or other taxes and all license, registration, or other fees due or incurred in connection with the sale of the Assets, and the payment of any income, property, or other tax, charge, fee or license associated with the Assets; and,

        e.     The proposed sale to Debtors is subject to overbidding at the hearing on this Motion. If a Qualified Overbidder outbids Debtors, unless Debtors elect to be approved as backup bidders, the Agreement shall terminate. Similarly, if a Qualified Overbidder outbids Debtors and closes its purchase of the Assets, then the Agreement between Debtors and the Trustee shall terminate and neither party shall have any further rights or obligations thereunder.

### Fair Price for Assets

10.    The Purchase Price and terms of the sale of the Assets are appropriate in light of the valuations assigned by Debtors and independently reviewed and analyzed by Trustee. There is no dispute as to the non-exempt value of the Debtors' cash or near-cash financial accounts included in the Assets, which were scheduled in the amount of $3,280. The Debtors scheduled approximately $13,384 in non-exempt vehicle equity, and although the Trustee

believes that some of the Debtors' vehicle valuations are somewhat low, the Trustee does not believe he could generate substantially more net sales proceeds for the Estate if the Trustee hired an auctioneer to sell the vehicles.

11. The Trustee has evaluated the Debtors' valuations of the other Assets described above, and in their Amended Schedule B, and has concluded that the Debtors' valuations of those assets are supportable, but that the Trustee would have difficulty selling such assets to a third party on commercially reasonable terms. With respect to the Estate's interest in Allard Institute, Inc., the Trustee has investigated this entity through a review of its books and records, and has concluded that it has substantial liabilities, is not profitable, and cannot be sold at a meaningful price to a third party. Although the Trustee received an inquiry about a possible sale of certain Allard Institute assets (but expressly not its liabilities) to Vince Bowey, a former employee or contractor apparently involved in a dispute with that entity, the Trustee concluded that the assets of the Allard Institute, a non-debtor entity, could not be broken out and sold separately by this estate - at least not in a cost-effective manner. Consequently, the Trustee attributes no value to the Estate's equity ownership interest in the Allard Institute.

12. Further, the Debtors listed on Schedule B contingent counterclaims against Mr. Bowey, which they valued at $100,000.00. The counterclaims appear to arise in connection with disputes between Susan Allard and the Allard Institute, on the one hand, and Mr. Bowey, on the other hand. Based on documentation made available to the Trustee, it appears that the disputes date back to at least 2006, if not earlier. Both Ms. Allard and the Allard Institute are or were defendants in a lawsuit commenced by Mr. Bowey (Yolo County Superior Court Case No. CV08-2771). Due to the uncertain and contingent nature of Debtors' counterclaims against Mr. Bowey, the fact that he almost certainly asserts offsetting claims, and the expense and delay necessarily involved with establishing any ability to prevail on such counterclaims, as well as the uncertainty of collecting on such counterclaims even if the Estate prevailed thereon, the Trustee has completely discounted the value of the alleged counterclaims to the Estate.

13. With respect to the Debtors' residence, the Trustee has investigated the value

of the residence and concluded that its fair market value likely exceeds slightly the value scheduled by the Debtors. The Trustee has concluded that there is approximately $31,436.00 in equity in the residence as of September 2013, after accounting for costs of sale, and payment of the mortgage encumbering the residence, as well as the Debtors' homestead exemption. For purposes of this Motion, therefore, the Trustee believes that assigning $31,436.00 of the Purchase Price to the value of the equity in the residence is appropriate.

14. The Trustee believes that assigning a fair value of approximately $23,564.00 for the remaining Assets is reasonable, after discounting and allowing for costs of continued ownership, sale and delay, continued depreciation in value of the remaining Assets, and applicable deductions for Debtors' exemption claims in such Assets. Moreover, the Trustee has concluded that selling the personal property components of the Assets as a package, rather an individually, enhances the overall proceeds generated from the Assets. Put another way, the sale of the Assets was negotiated as a package deal, allowing the Trustee to administer certain Assets in a more cost effective manner than selling the Assets on an individual basis. As noted above, there are a number of components of the Assets to which the Trustee assigns no or very little value, which might not be administered at all if not included in the package of Assets sold pursuant to the Agreement.

15. Trustee acknowledges that the overbidding procedure described herein will provide the estate an opportunity to confirm the values assigned by the Trustee to the Assets and/or to recover additional value from the Assets, if any overbidding occurs thereon.

16. Accordingly, in the exercise of his business judgment, the Trustee believes the Purchase Price and the terms of the sale are fair and reasonable and in the best interests of the Estate and its creditors, and should be approved pursuant to 11 U.S.C. Section 363(b).

### Proposed Terms for Overbidding

17. The sale of the Assets is subject to overbidding at the hearing on this Motion. The Trustee proposes the following overbidding terms, which are designed to ensure that parties wishing to pay more for the Assets are given an opportunity to do so:

    a. The Trustee proposes that the Assets be sold as a package and that

overbidding occur in increments of $1,000.00, with the initial overbid increment being $56,000.00.

      b.      The Trustee proposes that any persons or entities wishing to bid on the Assets be required to become a qualified overbidder ("Qualified Overbidder") in the manner set forth herein no later than two (2) business days prior to the date set for the hearing to approve this Motion. Any person or entity wishing to be a Qualified Overbidder must deliver to the Trustee a written notice of its desire to participate in the overbidding on the Assets, and demonstrate to the Trustee the ability to perform the obligations of Debtors under the Agreement, including the ability to pay the purchase price for the Assets within ten (10) business days after the conclusion of the hearing on this Motion.

      c.      If the Debtors are the high bidder on the Assets, they shall pay the greater of their high bid or the Purchase Price for the Assets. In the event that a third party outbids the Debtors, and the Trustee receives full payment for the Assets on the terms set forth herein, as may be modified by the court, the Agreement described herein between the Debtors and the Trustee shall be of no further effect.

      d.      If full payment from the high bidder is not received for the Assets according to the terms set forth herein, and the Debtors elect to be approved as a backup buyer, the Debtors shall be obligated to pay their highest bid for the Assets, and the Agreement shall continue to control.

**WHEREFORE**, based on the Trustee's determination that the sale of the Assets as described herein is in the best interests of the Estate and the creditors thereof, the Trustee requests that the Court enter an order providing that:

1) the Trustee is authorized to enter into the Agreement and to sell the Assets in exchange for the Purchase Price, on the terms and conditions set forth in the Agreement;

2) the sale set forth herein is approved as fair and reasonable;

3) the Trustee is authorized to sign any and all documents that may be appropriate and/or necessary to consummate the sale and transfer of the Assets to Debtors on the terms set forth herein;

4)    the sale of the Assets is on an "as is," "where is," "with all faults" basis, with no representations or warranties of any kind whatsoever from the Trustee or the Estate, subject to any and all liens and encumbrances, claims or competing interests therein, known or unknown, with the Debtors responsible for any and all sales, transfer, use or other taxes and all license, registration, or other fees due or incurred in connection with the sale of the Assets, and the payment of any income, property, or other tax, charge, fee or license associated with the Assets; and,

5)    for such other and further relief as the Court deems necessary and proper.

Dated: March 18, 2014

HEFNER, STARK & MAROIS, LLP

By _____
Aaron A. Avery, Attorneys for
GEOFFREY RICHARDS, Chapter 7 Trustee